### JOHN BRIGGS *vs.* EDWARD P. BOYNTON & another.

Middlesex.   January 16, 1912. — May 23, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DECOURCY, JJ.

*Bills and Notes.   Equity Jurisdiction,* To enjoin action on note.  *Contract,*
Construction.

In a suit in equity to enjoin the prosecution of an action at law on a promissory
note payable to the defendant and signed only by the plaintiff and to deter-
mine the rights of the parties under an agreement concerning certain shares of
stock, it was found by a master that the note was given as the last of successive
renewals of a note given by the plaintiff, the defendant and two others for money
used to purchase certain shares of stock upon a joint venture, that the note sued
upon was incomplete, that it was intended to be a joint note signed by all the
parties as makers or indorsers before delivery, and that as between the parties
it was intended to be binding upon each of them only for his one fourth share.
By an agreement in writing, made when the original note was given, the stock
was to be held "for the mutual benefit and equal rights" of the parties to the
agreement, and the plaintiff guaranteed to sell within ninety days sufficient
stock to provide the amount of the note, the money thus received to be applied
to the payment of the note, and the balance of the stock to be delivered one
fourth to each of the four parties.  The sale was not made. . The defendant
paid the note at maturity and the renewals were made for his reimbursement.
At the time of one of the renewals a new agreement in writing was made by the
four persons, by which the plaintiff agreed that within ninety days he would
sell enough of the stock to pay the new note and that upon his failure to make
such sale within ninety days he should forfeit all his "right in the equity of any
part" of the shares of stock.  No sale was made.  *Held,* that the plaintiff's
liability on the note was limited to his one quarter share in the enterprise; *also,*
that the right forfeited by the plaintiff by his failure to make the sale was only
the right to share in the division of the stock remaining after the sale of enough
of it to pay the note, and that he did not forfeit also the right to have the pro-
ceeds of the stock first applied to the payment of the note; and accordingly that
a sale of the stock or of enough of it to pay the note should be ordered and that
the plaintiff should be held answerable only for his share of the balance unpaid,
if there should be any.

BILL IN EQUITY, filed in the Superior Court on May 4, 1908,
to restrain the defendant Boynton from further prosecuting an
action at law against the plaintiff on a certain promissory note de-
scribed in the opinion, and to determine the rights of the parties
under an agreement in writing by which certain shares of stock
were placed in the name of the defendant Gould as trustee.

The case was referred to Edwin D. Sibley, Esquire, as master. The findings contained in his report are stated in substance in the opinion. The case came on to be heard before *Fox*, J., who reserved it upon the pleadings, the master's report and the exceptions thereto for determination by this court.

The case was submitted on briefs.

*A. G. Carver, P. W. Carver & O. C. Scales,* for the plaintiff.

*J. A. Harris & F. B. Livingstone,* for the defendants.

HAMMOND, J. The master has made certain findings which in substance are as follows.

In June, 1906, the plaintiff with the defendants and one Lane, four in all, became interested in the purchase of fourteen thousand shares of the stock of a corporation organized under the laws of the State of Maine. In order to purchase the stock the parties made a promissory note for $1,522.50, dated June 15, 1906, payable ninety days after date to the order of Gould and secured by collateral, the property of Boynton. The note was signed by Boynton and indorsed by Gould, Lane and Briggs, and on it was obtained from the Beacon Trust Company the sum of $1,500 with which the stock was purchased, the certificate being taken in the name of Gould. For the protection of all parties a written agreement setting forth the rights of the parties was executed by the four. It was dated June 15, 1906, and declares that the stock which had been bought was deposited with Gould "for the mutual benefit and equal rights" of the parties to the agreement; that Lane and Briggs guaranteed to sell within ninety days from June 15, 1906, "sufficient stock to the amount of fifteen hundred twenty-two and 50–100 (1,522.50) dollars," the money thus received to be deposited with Gould and to be applied to the payment of the above mentioned note; that should the sum of $1,522.50 be obtained before the expiration of the said ninety days, and the outstanding note duly cancelled, the balance of the stock should be immediately delivered, one fourth thereof to each of the four parties; the stock when thus divided to be the personal property of the one receiving it and the joint undertaking to be thereby terminated. The price at which the stock was to be sold by Lane and Briggs seems not to have been fixed in the agreement, but to have been left to their discretion.

The master finds that "Up to this point . . . there was a

joint undertaking by all these parties for profit; that they purchased the stock with the proceeds of this note and intended to sell the stock within ninety (90) days, so that when the note came due they would be able to meet it from the proceeds of the sale of the stock and close up the whole transaction," dividing equally between them the balance of the unsold stock.

No stock was sold, and the note at its maturity on September 15, 1906, after due demand and protest, was paid to the trust company by Boynton, and another note was given. As to this second note the master reports that Gould testified that it had been destroyed by him "because it was superseded by one of exact character in every detail," namely, a third note. This third note which was given in the place of the second note was dated December 13, 1906, "was for ninety (90) days payable to the order of Boynton, signed by Gould and indorsed by Boynton, by his attorney, Gould, and also indorsed by Briggs." At this time a new written agreement was executed between the same four persons, "setting forth that they had purchased the fourteen thousand shares of stock; that the stock was in the name of Gould, in trust, for the benefit of all the parties; that Lane and Briggs, in consideration of a loan by Boynton of $1,545.33 (which the evidence showed was the original $1,500, with the accumulated interest), . . . would within ninety days sell enough of the stock to pay [the] loan of $1,545.33 and deliver [the] amount with interest, to Gould for Boynton as payment of the loan. That the balance of stock remaining unsold should be equally divided between the parties, and that upon the failure of Lane or Briggs to make the sale of the stock within ninety days, they, Lane and Briggs, each should forfeit all their right in the equity of any part of the fourteen thousand shares of stock. This agreement was signed by all the parties who affixed their seals, the other agreement above referred to not being under seal." The master further finds that no loan had been made by Boynton although the agreement states that one had been made. He, however, had paid and taken up as above stated, the original note.

The third note was placed in the bank for collection. On its maturity on March 13, 1907, no notice was sent to Briggs by Boynton, but the day after it came due Briggs went to Gould's office and desired to renew it. Gould drew up the note declared

on, which is for $1,568.51, signed by Briggs, payable in ninety days to the order of Boynton, witnessed by Gould and indorsed by Boynton, and sent it to Boynton who was in Florida. As to this note the master says: "Gould testified that he did not get Lane to sign this last note, . . . nor had he, Lane, signed the [third] note, . . . and the reason Gould gave was that Lane was not accessible; but that he, Gould, wrote [to] him [Lane] . . . to come to Boston." On June 12, 1907, the day of the maturity of this last note, Briggs desired to renew it, but Boynton finally refused. The master further finds as follows:

"All the evidence in this case goes to prove that there was no money contributed by any of the parties at the start, but that a certain sum was raised from the bank by the [first] note. That the money was used to purchase stock for their joint benefit and the stock, so far as the holder of it is concerned, is still held for their joint benefit, subject to the agreements. I find that the second and other notes were each given in renewal of the next preceding one and that the last note given by Briggs, payable to Boynton, was for that purpose and no other, and it was expected by Briggs, signer of the note in suit, that the other parties to all of the former notes would sign said note. I find upon the evidence that said note was not a complete note according to the intention and understanding of Briggs at the time he gave it to Gould, who was acting for Boynton; but was intended to be a joint note of all the parties either as signers or indorsers, and not to be delivered to Boynton until completed."

Upon the whole evidence the master finds that the last note, being the one declared on in the action at law, was a renewal of the note paid by Boynton, and that all the notes subsequent to the first "were for the original amount plus interest." No stock ever was sold although Briggs and Gould made some effort to sell. The only evidence of the value of the stock was that before the first agreement it had sold at forty cents a share.

The master at the request of the plaintiff in the bill further found that the evidence disclosed no explanation why Gould did not sign this last note; that this note was "simply a method of the renewal of the pre-existing obligation of all parties," that Briggs never received any money or any consideration whatever from Boynton, that the whole transaction was a joint and several

undertaking between the four persons for the purchase of the stock, in which each was bound to contribute one fourth of the purchase money and to share equally in the profits, that each of the parties to the transaction should pay in the final adjustment between them one- fourth of the amount of the money raised for the purchase of the stock, that there is no other consideration for the notes than the transaction as to the stock and that upon the evidence "there has been no forfeiture to . . . Briggs in said stock so far as said stock being sold and the proceeds applied to the payment of the note declared on."

Briefly stated the scheme was a joint enterprise to buy this stock, profits and losses to be shared equally. The money for the purchase was raised by a note upon which all put their names and which was secured by collateral owned by Boynton. Boynton paid this note at maturity thus releasing his collateral. He never was reimbursed in cash, but by notes which as they came due were renewed and which as between the parties were intended to be binding only for the sums representing the share of each for the purchase money, namely, each one quarter. And this scheme, so far as respects the personal liability on the notes no matter how the names appeared thereon, never was changed. It follows that the only liability of Briggs on the note would be the amount of his one quarter.

But what about the stock? The master is right in saying that Gould holds it subject to the agreements above named. The first agreement is superseded by the second, but the latter is to be interpreted in the light of the circumstances under which it was made, and among those circumstances are the first written agreement and the rights of the parties thereunder. The first agreement is very clear. All were equally interested in the stock, the note was to be a first charge upon the stock, and the balance after the payment of the note was to be equally divided. At the time of the second agreement no stock had been sold. Lane and Briggs had failed to make good their guarantee to sell stock enough to pay the note. Boynton was the only person who had advanced any money, and he had advanced the whole purchase price. He was entitled in equity to be reimbursed by a sale of the stock and, if the stock was insufficient to pay the note, to receive from each of his associates one quarter of the balance. He already had

taken one note from his associates and was about to take another. Under these circumstances the second agreement was made. Under it Lane and Briggs still agree to sell stock enough to pay the note. Substantially the only difference between the two agreements is that the latter contains a forfeiture clause reading as follows: "It is also expressly agreed that the failure on the part of said Lane or Briggs to make the sale of stock as above stated — within ninety (90) days — they shall each forfeit all their right in equity to interest of any kind to any part of said fourteen thousand (14,000) shares of the stock above mentioned."

What was to be forfeited? Was it simply the right of Lane and Briggs to share in the division of the stock remaining after the sale of enough to pay the note, or did it include also their right to have the stock first applied to the payment of the note? If only the first, then Briggs has the right to have the proceeds of the sale of the stock applied to the payment of the note, and is answerable only for one fourth of any unpaid balance.

The master has found that the true meaning of the forfeiture clause is that while Briggs has lost his right to share in the stock remaining after the payment of the note he still has the right to insist upon the sale of enough stock to pay the note. The question is close, but on the whole we are inclined to take that view. As to the effect of the agreement Briggs has lost all right to any profit and still is held accountable for his share of any loss.

There should be a decree providing that the stock or enough of it shall be sold to pay the note, and that the plaintiff shall be held answerable only for his share of the balance unpaid, if any there be; that meanwhile and until the further order of the court, Gould shall be enjoined from conveying any stock except for the purpose of such sale, and that Boynton be enjoined from further prosecuting his action at law, until the further order of the court.

*Decree accordingly.*